McCORMICK, Appellant, vs. HERNDON, Respondent.

*January 19 — February 3, 1891.*

*Mortgages: Mortgagor's right to resume possession after abandonment.*

The mortgagor of land is entitled to the possession thereof, and although he has abandoned such possession he or his grantee may return and resume it at any time before foreclosure, as against mere intruders having no title.

APPEAL from the Circuit Court for *Grant* County.

Ejectment. A former appeal is reported in 67 Wis. 648. The plaintiff obtained a new trial under the statute (sec. 3092, R. S.), which resulted in a verdict for the defendant. From the judgment entered on such verdict the plaintiff appeals.

*R. A. Watkins* and *A. R. Bushnell,* for the appellant.

For the respondent there was a brief by *Clark & Mills,* and oral argument by *J. T. Mills.*

COLE, C. J.   The facts of this case are sufficiently stated in the report on a former appeal (67 Wis. 648), and need not be repeated.   On the last trial, which was one taken under the statute, substantially the same evidence was given as on the former, with some additional testimony tending to prove that the warranty deed from William H. Garner and wife to John B. Wheeler, dated July 9, 1859, was intended to be, and was in fact, a mortgage to secure the payment of a debt owing by the grantor to the grantee. It did not appear that this mortgage — if such was its real character in law — had ever been paid or released, nor did it clearly appear that Garner gave any written obligation to pay Wheeler any stipulated sum of money.   The most direct evidence on that point is found in the second deposition of William James Garner, which was taken in Oregon. He was the son of William H. Garner, and was present when the warranty deed was executed, and states the circumstances under which it was made.   He says the understanding and agreement was that Wheeler should and would reconvey the land to William H. Garner whenever the note for $175 should be paid.   It is a fair inference from this item of testimony that, if a note was given at the time of the execution of the deed, William H. Garner was the maker thereof, and that it was the payment of this debt which the conveyance was intended to secure.   But still there is no pretense or claim that any note has been paid by the Garners or that the mortgage has been discharged.

The cause has been tried from the outset, in some of its phases at least, on the theory that the warranty deed was in law a mere mortgage, and this seems to be especially true at the last trial.   It is undisputed that the plaintiff has acquired the title of the widow of William H. Garner, and of all the heirs, so that she stands in the shoes of William H. Garner so far as the right of possession of the premises is concerned.   Consequently whatever rights to the prop-

erty William H. Garner might assert were he living, she can insist upon and maintain, upon the facts disclosed in the evidence. It is likewise a conceded fact that the defendant has no title to the premises, and does not claim to have acquired any under the deed which was given to Wheeler. He must be treated as a mere intruder.

The testimony clearly showed that William H. Garner, in his life-time, and his widow and heirs, or some of them, after his death, were in the actual and continued occupation of the lands in dispute, and controlled them under a claim of title. The lands were cultivated and improved by the widow and heirs, as such lands are usually cultivated and improved, the occupants paying the taxes and having the benefit of the crops. The taxes were not paid in 1879, and the lands were sold for delinquent taxes in 1880. About this time the widow and most of the heirs removed west, and the lands were leased for a year or two to tenants who paid rent to them. It is claimed that William H. Garner in his life-time, and that the widow and heirs after his death, finally removed from these lands and went away west, intending to abandon them, or not intending to return to live upon them again, and instructions were asked, and some given, to meet that aspect of the case. Among other instructions, the trial court gave this, at the request of the defendant: "An abandonment of the land in controversy in this action by William H. Garner and others claiming under him in 1879, with no intention of returning to or further claiming said land or paying the money due Wheeler or his heirs, if the jury find the facts so to be, would leave Wheeler, under the deed of the land he held, the only one entitled to the possession of the land." To the giving of this instruction an exception was taken by the plaintiff.

It appears to us the instruction, as a proposition of law, was erroneous when applied to the facts. In this state the mortgagor is entitled to the possession of the mortgaged prop-

erty, and to all profits of the same until foreclosure, and is regarded as the real owner. If he abandons the possession, he may return at will and reassume it. After default, if the mortgagee can lawfully obtain possession he can hold it, even as against the mortgagor. If the mortgagor would obtain possession from the mortgagee he must pay the mortgage debt, and then the court will reinstate him in the possession. These principles of law are quite elementary, and scarcely require the citation of authorities to support them, so it is obvious that in this case Garner or his heirs were entitled to the possession of the land, and, even if they had abandoned it, might return and reassume actual possession until foreclosure, unless the mortgagee was in actual possession. Constructive possession would follow the legal title which remained in the mortgagor. Therefore Wheeler, under his deed, was not the only party entitled to the possession of the land, and, of course, he could not maintain ejectment for the recovery of the mortgaged premises, as such an action is expressly prohibited to the mortgagee by our statute. Sec. 3095, R. S. A conveyance by the widow and the other heirs to the plaintiff indicates clearly an intention to assert a right in the land. It is true this was a quitclaim deed, but it conveyed not only the land itself, but also contains a transfer of all claims for damages which the grantors or either of them had against the defendant for mesne profits. It was a conveyance of the equity of redemption which had become vested in them.

It is clear that, if the deed to Wheeler was given to secure the payment of money, upon the facts assumed to exist in the instruction the plaintiff should recover, as she stood in the same position the original mortgagor would, had he been alive and brought the action. He certainly would have been entitled to the possession as against a mere intruder who did not show any legal title. The court did charge, in another place, that if the jury were satisfied from

the evidence that the deed to Wheeler was intended by the parties to it to be only a mortgage, and that the Garners did not abandon the land to Wheeler before they made the deed to the plaintiff, the plaintiff should recover. But there was surely no evidence of the abandonment of the land by the Garners to Wheeler, further than the simple fact that they moved to the west, somewhere, and did not live upon the land. But this did not necessarily imply an intention to surrender and give up all right, title, and interest in the property, as the jury might infer from the charge. We think the charge was misleading as to the effect of an abandonment of the premises by the Garners, and the legal consequences which would follow from that act.

We do not deem it necessary to notice the errors relied on in admitting or excluding testimony. The evidence may be different on another trial, and we reverse the judgment upon the charge alone.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.